**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RIVER LIGHT V, L.P. and ) <br> TORY BURCH LLC, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> THE PARTNERSHIPS and ) <br> UNINCORPORATED ASSOCIATIONS ) <br> IDENTIFIED ON SCHEDULE "A," ) <br> ) <br>       Defendants. ) <br> ) | Case No. 17-cv-08188 |

## COMPLAINT

Plaintiffs River Light V, L.P. and Tory Burch LLC (together, "Plaintiffs" or "Tory Burch") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using counterfeit versions of Tory Burch's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using counterfeit versions of Tory Burch's trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Tory Burch substantial injury in the State of Illinois.

## II. INTRODUCTION

3.      This action has been filed by Tory Burch to combat online counterfeiters who trade upon Tory Burch's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products, including footwear, handbags, accessories, clothing, and other products, using counterfeits of Tory Burch's TORY BURCH, REVA, "TT" and other trademarks (the "Counterfeit Tory Burch Products"). Defendants create the Defendant Internet Stores by the hundreds and design them to appear to be selling Tory Burch's genuine products, while actually selling Counterfeit Tory Burch Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the Counterfeit Tory Burch Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction,

2

occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Tory Burch is forced to file this action to combat Defendants' counterfeiting of Tory Burch's registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Tory Burch Products over the Internet. Tory Burch has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4.      Tory Burch is an American lifestyle brand that embodies the personal style and sensibility of its CEO and designer Ms. Tory Burch. The collection, known for color, print and eclectic details, includes ready-to-wear apparel, shoes, handbags, accessories and beauty products (collectively, the "Tory Burch Products"). Art, music, travel, interiors and the designer's own stylish parents are inspirations for the collection.

5.      Tory Burch is a global business with more than 190 freestanding boutiques and a presence in over 3,000 department and specialty stores. In Illinois, Tory Burch Products are offered for sale at various stores, including Saks Fifth Avenue, Nordstrom, Bloomingdale's, and an eponymous boutique located in Chicago's famous Magnificent Mile shopping district. The brand's official website toryburch.com, which launched in 2004, is the company's biggest store and is also home to the Tory Daily, an online magazine with all original content. Known for digital innovation, the company also has websites in Europe and Asia (including e-commerce sites in the UK, France, Italy, and Germany); a Webby-nominated app called the Tory Daily; and

a robust social media presence. The Tory Burch brand has been recognized by the fashion industry with several awards, including the CFDA for Accessory Designer of the Year; Accessory Brand Launch of the Year from Accessories Council of Excellence; and Rising Star award from Fashion Group International. Ms. Burch was also named one of Forbes' Most Powerful Women in the World. In April of 2014, Ms. Burch was appointed as an inaugural member of President Obama's Ambassadors for Global Entrepreneurship (PAGE) initiative, which was developed to assist in fostering future entrepreneurs by bringing them together with American businesspeople who have agreed to share their ideas, experience and time with this next generation. Ms. Burch also published her first book in 2014, "Tory Burch In Color," which was a New York Times Bestseller.

6.     Since the brand's founding in 2004, Tory Burch has continuously sold products under both the "TT" and TORY BURCH trademarks and variations thereof. Tory Burch has built substantial goodwill in the "TT" and TORY BURCH trademarks, and the brand is recognized worldwide as one of the most sought-after American fashion brands. The "TT" and TORY BURCH trademarks are famous and valuable assets of Tory Burch.

7.     In addition to common law trademark rights, Tory Burch holds registrations for its distinctive trademarks, including TORY BURCH, REVA, the "TT" logo and variations thereof in approximately 50 countries around the world, including with the United States Patent and Trademark Office (collectively, the "TORY BURCH Trademarks," a non-exclusive list of which is included below).

| Registration Number | Trademark | Depiction of Mark | Goods and Services |
|---|---|---|---|
| 3,029,795 | TT |  | For: Candles in class 004.<br><br>For: Jewelry in class 014.<br><br>For: Accessories, namely, handbags, umbrellas and cosmetic bags sold empty in class 018.<br><br>For: Housewares, namely towels in class 024.<br><br>For: Clothing, namely, shirts, tops, sweaters, pants, skirts, shorts, dresses, bathing suits, bikinis, sarongs, shoes, socks, belts, robes and headwear; outerwear, namely, scarves, jackets, vests and coats in class 025. |
| 3,386,532 | TORY BURCH | TORY BURCH | For: Retail clothing stores in class 035. |
| 3,428,373 | TORY BURCH | TORY BURCH | For: Coats; dresses; footwear; headwear; jackets; pants; shirts; shorts; skirts; sleepwear; sweaters; swim wear; tops in class 025. |
| 3,428,374 | TORY BURCH | TORY BURCH | For: Cosmetic bags sold empty; handbags; umbrellas in class 018. |
| 3,428,816 | TORY BURCH | TORY BURCH | For: Jewelry in class 014. |
| 3,479,178 | REVA | REVA | For: Footwear in class 025. |
| 3,563,326 | TT |  | For: A full line of handbags in class 018.<br><br>For: A full line of women's clothing and footwear in class 025. |

| 3,758,631 | TORY BURCH | TORY BURCH | For: Eyewear and eyewear cases in class 009. |
| 3,814,500 | TORY BURCH | TORY BURCH | For: Candles in class 004. |
| 3,918,505 | REVA | REVA | For: Handbags in class 018. |
| 3,920,528 | TT |  | For: Eyewear in class 009. |
| 4,029,068 | TT |  | For: Robes in class 025. |
| 4,045,568 | TT |  | For: Eyewear and eyewear cases in class 009. |
| 4,129,090 | TT |  | For: Metal key chains in class 006. |
| 4,150,523 | TT |  | For: Leather key chains in class 018. |

| | | | |
|---|---|---|---|
| 4,205,354 | TORY BURCH | TORY BURCH | For: Cell phone cases; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players in class 009. |
| 4,213,404 | TT |  | For: Backpacks; beach bags; business card cases; coin purses; dog collars; dog leashes; overnight bags; pet clothing; wallets; wristlet bags in class 018. |
| 4,213,405 | TT |  | For: Cell phone cases; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players in class 009. |
| 4,664,182 | TT |  | For: Watches in class 014. |
| 4,242,007 | TT |  | For: Eyewear in class 009. |
| 4,459,720 | TT |  | For: Backpacks; cosmetic cases sold empty; handbags; leather pouches; and tote bags in class 018. |
| 4,317,165 | TT |  | For: Business card cases; cosmetic cases sold empty; handbags; leather pouches; luggage; purses; tote bags; umbrellas; wallets; wristlet bags in class 018. |
| 4,345,875 | TT |  | For: Belts; dresses; footwear; hats; jackets; pajamas; pants; scarves; shirts; skirts; sweaters; swimwear in class 025. |

| 4,363,739 | TT |  | For: Jewelry in class 014. |
|---|---|---|---|
| 4,365,683 | TT |  | For: Belts; footwear in class 025. |
| 4,382,707 | TT |  | For: cell phone cases; eyewear; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players; sunglasses in class 009. |
| 4,656,700 | TORY BURCH | TORY BURCH | For: Watches in class 014. |
| 4,345,879 | T |  | For: Handbags and wallets in class 018. |
| 4,345,880 | T |  | For: Footwear, scarves, shirts, and sweaters in class 025. |
| 4,345,878 | T |  | For: Jewelry in class 014. |
| 4,345,877 | T |  | For: cell phone cases; eyewear; leather protective covers specially adapted for personal electronic devices; protective covers and cases for cell phones, laptops and portable media players; sunglasses in class 009. |
| 5,015,665 | TORY | TORY | For: watches in class 014. |
| 4,422,079 | TORY | TORY | For: Handbags in class 018. |

8

8.     True and correct copies of the United States Registration Certificates for the above-listed TORY BURCH Trademarks are attached hereto as **Exhibit 1**.  The registrations for the TORY BURCH Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065.   The registrations for the TORY BURCH Trademarks constitute *prima facie* evidence of their validity and of Tory Burch's exclusive right to use the TORY BURCH Trademarks pursuant to 15 U.S.C. § 1057(b).  The TORY BURCH Trademarks have been used exclusively and continuously by Tory Burch and its authorized licensees, some since at least as early as 2004.

9.     The TORY BURCH Trademarks are owned exclusively by Tory Burch and are displayed extensively on Tory Burch Products and in Tory Burch marketing and promotional materials.   Tory Burch, together with its authorized licensees, extensively markets the Tory Burch brand in the United States and around the world and has spent millions of dollars in marketing since 2004 to build the Tory Burch brand.  These efforts have resulted in substantial sales of Tory Burch Products, as well as invaluable consumer goodwill.

10.     Tory Burch's innovative marketing and product design have enabled Tory Burch to achieve widespread recognition and fame, and have made the TORY BURCH Trademarks some of the most well-known marks in the fashion industry.  Since at least 2004, Tory Burch has operated a website at toryburch.com, which has received tens of millions of visitors.  Sales of Tory Burch Products at toryburch.com represent a significant portion of Tory Burch's business. The toryburch.com website features proprietary content, images and designs exclusive to Tory Burch.  Tory Burch is also popular on social media platforms with over 1,959,962 Facebook likes, over 398,000 followers on Twitter, and more than 1,600,000 followers on Instagram.

11. The Tory Burch brand has also become well-known as being a favorite of internationally known celebrities, many of whom are featured in photographs wearing Tory Burch Products. Widespread media coverage for Tory Burch in multiple fashion and entertainment magazines has occurred in the U.S. and elsewhere, including articles in such upscale, luxury magazines such as *Vogue*, *InStyle*, *Marie Claire*, and *Elle*. Articles about the Tory Burch brand have also been featured in *Time Magazine* and *New York Times Style Magazine*.

12. Media exposure for Tory Burch is not limited to print periodicals. Tory Burch Products have been featured on many television shows broadcasted around the world. In January 2012, Tory Burch was featured on *CBS Sunday Morning*, which called the brand a "fashion phenomenon," well-known by the public for the "distinctive 'double-T' logo." In 2005, Tory Burch Products were featured on the Oprah Winfrey Show, where Ms. Winfrey hailed Tory Burch as "the next big thing" in fashion. Since that time, the widespread fame, outstanding reputation, and significant goodwill associated with the TORY BURCH Trademarks have made them invaluable assets of Tory Burch.

13. Tory Burch maintains strict quality standards, and Tory Burch Products are inspected and approved by Tory Burch or an agent of Tory Burch prior to distribution and sale. Consequently, consumers and potential consumers around the world associate the TORY BURCH Trademarks with footwear, handbags, apparel, accessories, and related products constructed from the highest-quality materials, style, and workmanship. The TORY BURCH Trademarks have achieved widespread fame, are widely accepted by the public, are enormously popular, and have become some of the most widely-recognized trademarks in the fashion industry. As such, the TORY BURCH Trademarks are distinctive and famous.

**The Defendants**

14.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell Counterfeit Tory Burch Products to consumers within the United States, including the State of Illinois.

15.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of the TORY BURCH Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Tory Burch to learn Defendants' true identities and the exact interworking of their counterfeit network.  In the event that Defendants provide additional credible information regarding their identities, Tory Burch will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     The success of the Tory Burch brand has resulted in significant counterfeiting. Consequently, Tory Burch has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers.  In recent years, Tory Burch has identified hundreds of domain names linked to fully interactive websites and marketplace listings on platforms such as

iOffer, eBay, AliExpress, and Alibaba, including the Defendant Internet Stores, which were offering for sale and/or selling Counterfeit Tory Burch Products to consumers in this Judicial District and throughout the United States. Despite Tory Burch's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

17. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers. Many of the Defendant Internet Stores appear sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Numerous Defendant Domain Names also incorporate the TORY BURCH word mark (or variations thereof) into the URL, and the Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

18. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Tory Burch has not licensed or authorized Defendants to use any of the TORY BURCH

Trademarks, and none of the Defendants are authorized retailers of genuine Tory Burch Products.

19.     Many Defendants also deceive unknowing consumers by using the TORY BURCH Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for genuine Tory Burch Products.  Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Tory Burch Products. Other Defendants only show TORY BURCH Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Tory Burch Products.

20.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information.  On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names.  In addition, Counterfeit Tory Burch Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Tory Burch Products were manufactured by and come from a common source and that Defendants are interrelated.  The Defendant Internet Stores also include other notable common features including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images, including content copied from Tory Burch's official website toryburch.com.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit.  Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.  Rogue servers are notorious for ignoring take down demands sent by brand owners.  Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

23.     Counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Tory Burch's enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.  Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

24.     Defendants, without any authorization or license from Tory Burch, have knowingly and willfully used and continue to use the TORY BURCH Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Tory Burch Products into the United States and Illinois over the Internet.  Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Tory Burch Products into the United States, including Illinois.

25.     Defendants' unauthorized use of the TORY BURCH Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Tory Burch Products, including the sale of Counterfeit Tory Burch Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Tory Burch.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered TORY BURCH Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Tory Burch Products. The TORY BURCH Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Tory Burch Products offered, sold or marketed under the TORY BURCH Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the TORY BURCH Trademarks without Tory Burch's permission.

29. Tory Burch is the exclusive owner of the TORY BURCH Trademarks. Tory Burch's United States Registrations for the TORY BURCH Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Tory Burch's rights in the TORY BURCH Trademarks and are willfully infringing and intentionally using counterfeits of the TORY BURCH Trademarks. Defendants' willful, intentional and unauthorized use of the TORY BURCH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Tory Burch Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Tory Burch has no adequate remedy at law, and if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the goodwill in the well-known TORY BURCH Trademarks.

32.     The injuries and damages sustained by Tory Burch have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Tory Burch Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34.     Defendants' promotion, marketing, offering for sale and sale of Counterfeit Tory Burch Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association between Tory Burch and Defendants, or the origin, sponsorship, or approval of Defendants' Counterfeit Tory Burch Products.  By using the TORY BURCH Trademarks in connection with the sale of Counterfeit Tory Burch Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Tory Burch Products.

35.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Tory Burch Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

36.     Tory Burch has no adequate remedy at law and, if Defendants' actions are not enjoined, Tory Burch will continue to suffer irreparable harm to its reputation and the goodwill of its Tory Burch brand.

## COUNT III
## CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING ANY OF THE TORY BURCH TRADEMARKS

37.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 36.

38.     Tory Burch is the exclusive owner of the TORY BURCH Trademarks.  Tory Burch's United States Registrations for the TORY BURCH Trademarks (Exhibit 1) are in full force and effect.  Additionally, the TORY BURCH Trademarks are distinctive and famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

39.     Upon information and belief, Defendants operating a Defendant Domain Name incorporating any of the TORY BURCH Trademarks have acted with bad faith intent to profit from the unauthorized use of the TORY BURCH Trademarks and the goodwill associated therewith by registering, trafficking in, or using various domain names which are identical to, confusingly similar to, or dilutive of the distinctive and famous TORY BURCH Trademarks.

40.     Defendants have no intellectual property rights in or to any of the TORY BURCH Trademarks.

41.     Defendants' actions constitute willful cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

42.     Tory Burch has no adequate remedy at law, and the registration and use of the Defendant Domain Names incorporating the TORY BURCH Trademarks has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Tory Burch.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

43.     Tory Burch hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 42.

44.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Tory Burch Products as those of Tory Burch, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Tory Burch Products, representing that their Counterfeit Tory Burch Products have Tory Burch's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

45.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

46.     Tory Burch has no adequate remedy at law, and Defendants' conduct has caused Tory Burch to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Tory Burch will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Tory Burch prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the TORY BURCH Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution,

marketing, advertising, offering for sale, or sale of any product that is not a Tory Burch Product or is not authorized by Tory Burch to be sold in connection with the TORY BURCH Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any product as a Tory Burch Product or any other product produced by Tory Burch, that is not a Tory Burch Product, or not produced under the authorization, control, or supervision of Tory Burch and approved by Tory Burch for sale under the TORY BURCH Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Tory Burch Products are those sold under the authorization, control or supervision of Tory Burch, or are sponsored by, approved by, or otherwise connected with Tory Burch;

d. further infringing the TORY BURCH Trademarks and damaging Tory Burch's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Tory Burch, nor authorized by Tory Burch to be sold or offered for sale, and which bear any of Tory Burch's trademarks, including the TORY BURCH Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, at Tory Burch's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to River Light V, L.P., and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest

Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Tory Burch's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Tory Burch's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Tory Burch's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, and Alibaba, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the TORY BURCH Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the TORY BURCH Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Tory Burch all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the TORY BURCH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Tory Burch be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the TORY BURCH Trademarks and $100,000 per domain name incorporating any of the TORY BURCH Trademarks pursuant to 15 U.S.C. § 1117(d);

6) That Tory Burch be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 13th day of November 2017.          Respectfully submitted,


/s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbc.law
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law

*Attorneys for Plaintiffs*
*River Light V, L.P. and Tory Burch LLC*